## The Village of Essexville v. Henry F. Emery.

*Highways—Encroachment—Adverse possession—Appeal.*

The testimony in this case being conflicting, and the circuit judge, before whom it was taken, having had an opportunity to see the witnesses, and determine what reliance should be placed upon their testimony, the decree is affirmed.

Appeal from Bay. (Cobb, J.) Argued January 15, 1892. Decided February 5, 1892.

Bill to remove an encroachment from a highway. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*J. E. Kinnane* (*A. P. Lyon*, of counsel), **for com-**plainant.

*James Van Kleeck*, for defendant.

LONG, J. The bill is filed in this case to compel the defendant to move his fence in front of lots 3 and 4, block 1, of Grier, McDonell & Scheurmann's addition to the village of Essexville, from what is claimed to be a street. On the hearing in the court below the court dismissed the bill. Complainant appeals.

The complainant became an incorporated village under Act No. 204, Local Acts of 1883, having the powers and duties provided for incorporated villages by Act No. 62 of the Session Laws of 1875. The complainant claims that the fence in question encroaches upon the street; that the street was laid out as a public highway by the township authorities of Hampton, in which the village of Essexville is located, in 1857, and that its width is 66 feet; that the defendant is in possession of the lots; that the owners of the lands of which said lots form a part in 1870 made a plat of the said lands, acknowledged it, and placed it on record in the office of the register of deeds of Bay county; that the north line of said addition, as platted by the proprietors, is along the south line of said street; that the title of the defendant to the lands is derived through conveyances describing the property by reference to such plat, and that he has built a fence in front of said lots, situate eight feet north of the north line of his lots, and standing that distance in the street.

The defendant, in his answer, admits that the owners of the lands in which said lots are situate made, executed, and recorded the plat in 1870, but denies that the land was dedicated to the public, or ever accepted by it. He avers that the fence was built at least 18 years ago, and built where it now stands, and that it always has been maintained since that time upon the same line. He denies that it is an encroachment, or that his fence extends into the street. He denies that there is any street or highway at the place claimed in the bill, and

claims that he and his grantors have had possession of said lots for 22 years and upwards.

The testimony was taken in open court, and we think fully establishes the fact that Woodside avenue—the one in question—has been used by the public as a highway continuously for more than 30 years. There is some testimony tending to show that prior to the time of its being called "Woodside Avenue" it was known as "Prairie Road," and that in 1855 the highway commissioner of the township of Hampton surveyed it out as a highway four rods in width, and that it has been used continuously since that time by the public; and the only question that can arise upon this record is whether the public ever used the whole width of the highway opposite defendant's lots, or whether, during the last 15 years and upwards, the defendant has had a fence inclosing that portion of the highway, 8 rods in width, along the front of his lots, so that he may hold that strip of land by adverse possession.

The defendant, Emery, testified that the fence has been there continuously, to his knowledge, since 1868. In this he was supported by a large number of witnesses. One Louis Parent was called by the defendant as a witness, and testified that the fence now there was built by him 13 years ago; and at the time of his building it he tore down an old fence, which was rotten, and built a new fence on the line of the old one. He was asked how long he had known of the old fence standing there, and he testified that it had stood there, to his knowledge, for about 20 years.

Several witnesses were called by the complainant, who testified they remembered the time when a Mr. Lalone was killed there, and that they attended the inquest, in the year 1874, and that there was no fence in front of these

premises at that time. The testimony of the witnesses was contradicted by defendant, Emery, who claimed and testified that there was a fence there at that time, but that the gate had been taken off its hinges and removed, leaving an opening in the fence. The defendant obtained title to these lands August 23, 1875.

We are not advised in the record in this case upon what grounds the court below dismissed complainant's bill, but presumably it was upon the ground that the defendant held the premises in question by adverse possession, and that his fence inclosed this strip; that his fence had been kept and maintained there for the statutory period; and that during that time he had used and occupied this strip of land with his inclosure, so that his title became absolute by open, continuous, notorious, adverse possession. The court below had an opportunity to see the witnesses, and to determine the reliance to be placed upon their testimony. The testimony is conflicting, and we are unable to say, in the face of the ruling of the trial judge, that the complainant has presented such a case as would entitle it to the relief sought.

The decree of the court below must be affirmed, with costs.

Morse, C. J., McGrath and Montgomery, JJ., concurred. Grant, J., did not sit.